**Roseann DUCHON, Plaintiff-Appellant,**

v.

**CAJON COMPANY, Defendant-Appellee.**

No. 85–3398.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 10, 1986.

Decided May 19, 1986.

Denise J. Knecht, argued, Russell Z. Baron, Ticktin, Baron & Co., L.P.A., Cleveland, Ohio, for plaintiff-appellant.

Jeffrey M. Embleton, argued, Mansout, Gavin, Gerlack, & Manos, Cleveland, Ohio, for defendant-appellee.

Before KRUPANSKY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Roseann Duchon appeals the summary judgment entered in her action which charged her former employer, Cajon Company, with sex discrimination in violation of

Title VII, 42 U.S.C. § 2000e *et seq.*, and failure to pay regular and overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. The action also alleged pendent state claims against three individual defendants, Bruce Baunach, Bruce Mayer, and Timothy Coleman, all Cajon employees, for defamation and interference with contractual relations. Duchon alleges that the district court's grant of summary judgment was erroneous because there were genuine issues of material fact concerning the reasons for her termination and Cajon's alleged nonpayment of overtime wages due. She also challenges the district court's denial of her request to amend her complaint in order to establish diversity jurisdiction against Timothy Coleman. For the reasons stated below, we affirm the judgment of the district court in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

Duchon was hired by Cajon in 1981 as a receptionist. She performed these duties satisfactorily. In June 1982 she was laterally transferred to a clerical position in the personnel department. Duchon alleges that throughout her employment with Cajon she was subject to sexual harassment in the form of sexual innuendo, unwelcome advances, and an atmosphere generally degrading to women, but that Cajon did nothing when told of such incidents. Duchon states that she became involved with Coleman in December 1981. She phoned and visited him at his apartment. Duchon alleges that the relationship was consensual until September 1983 when Coleman surprised her by calling police when she went to his apartment. Duchon also asserts that Coleman confided that he had been previously involved with another receptionist who was transferred to a Cajon affiliate at the end of the relationship. Duchon alleges that on September 13, 1983, Bruce Mayer, the Industrial Relations Manager and her immediate supervisor, told her to resign or face termination because of her relationship with Coleman. She resigned. Coleman was not disciplined, discharged, or asked to resign. Duchon asserts that she

adequately performed her job, received regular salary increases, and was never warned that her job was in jeopardy. After termination, Duchon received unemployment compensation, because Cajon told the Ohio Bureau of Employment Services that she was terminated for "lack of work." Duchon further alleges that she was not paid properly for overtime. In addition to the above allegations presented in her complaint and sworn affidavit, Duchon submitted the affidavit of an accountant who attested that she had compared Duchon's time cards with her paycheck stubs in accordance with Fair Labor Standards Act requirements and that in her professional opinion Duchon had been undercompensated by $670.36.

Cajon alleged the following facts in its motion for summary judgment under Rule 56, Fed.R.Civ.P. After Duchon transferred into the clerical position, she performed her duties less than satisfactorily. In a February 1983 formal review her immediate supervisor and Industrial Relations Manager, Bruce Mayer, told her not to misrepresent her authority, to prioritize and organize her work better, and to remedy a tardiness problem created when she stretched her lunch period to nurse her infant. Mayer also warned Duchon on June 24, 1983, that her attitude, if not changed, would jeopardize her continued employment. Subsequent to this Duchon misrepresented her authority by using a fictitious job title for mailing lists, signed Mayer's name to several office notices without his approval, and failed to follow her work schedule. In late August 1983, Bruce Baunach, the Sales Manager, told Mayer that Duchon was harassing Coleman by phoning and writing him. Coleman confirmed this, but said that he would handle the problem without involving management. Two weeks later, Coleman told Mayer that Duchon had appeared at his condominium on September 9, 1983, and that he had been forced to call the police when she refused to leave. In light of this incident and Duchon's prior performance problems, Mayer decided to terminate her on September 13, 1983. He

told Duchon that she could resign or be terminated. After Duchon left, her position remained open until February 1984 when another woman was hired to replace her. Duchon never reported a single instance of harassment. With regard to overtime, Duchon was paid for all authorized overtime. Because office policy permitted employees to conduct personal business or socialize after quitting time, their time cards would often show that they left later than quitting time.

■ Summary judgment may only be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. All facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). We agree with the district court that Duchon established a prima facie case of sex discrimination in that she is a member of a protected class, she was discharged, and she was qualified for the position she held. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Becton v. Detroit Terminal of Consolidated Freightways*, 687 F.2d 140, 141 (6th Cir. 1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1432, 75 L.Ed.2d 791 (1983). Although replacement of the plaintiff by someone outside the protected class is often an element of establishing a prima facie case, *see e.g. Becton*, 687 F.2d at 141, in a case such as this in which disparate discipline for involvement in a personal affair is alleged, Duchon's replacement by another female is irrelevant to the reason for her discharge. *See Beaven v. Commonwealth of Kentucky*, 783 F.2d 672, 676–77 (6th Cir.1986); *Burdette v. FMC Corp.*, 566 F.Supp. 808, 815–17 (S.D.W.Va.1983). Once Duchon established her prima facie case the burden of production shifted to Cajon to articulate a legitimate, nondiscriminatory reason for her discharge. *Texas Dept. of Communi-*

*ty Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). The district court found that Cajon's reason for discharge; i.e. Duchon's inadequate performance and her personal relationship with Coleman, was non-discriminatory. The district court further found that Duchon's admission of her personal relationship with Coleman corroborated Cajon's explanation, so that she had failed to raise a genuine question of fact concerning the material issue of whether Cajon's articulated reason for her discharge was merely a pretext for discrimination. *See id.* at 255–56, 101 S.Ct. at 1094–95. The district court thus granted summary judgment.

■ We conclude that the district court erred. Duchon's affidavit specifically attested that she received regular wage increases (which Mayer never denied); that she had never been warned or disciplined about her performance; and that she received unemployment benefits because Cajon represented to the Ohio Bureau of Employment Services that she had been terminated for "lack of work" (which Mayer never denied). These allegations, which the district court ignored, directly contradict Cajon's stated reason that Duchon was discharged in part for poor performance. They raise a genuine issue of material fact with respect to the reason for her discharge so as to preclude summary judgment. Moreover, Mayer's affidavit, when read in a light most favorable to Duchon as it must be on a motion for summary judgment, in and of itself raises an inference of discrimination. Coleman continued in Cajon's employ while Duchon was terminated for "the harassment of Mr. Coleman." Mayer's affidavit strongly suggests that Coleman's version of the relationship and alleged harassment was readily accepted, while little or no attempt was made to investigate or hear Duchon's side of the story. Duchon's affidavit confirms this. Such allegations of disparate treatment or discipline of co-workers arising out of a personal affair are sufficient to defeat a motion for summary judgment. *Burdette,*

566 F.Supp. at 817; *see Shore v. Federal Express Corp.*, 589 F.Supp. 662, 667 (W.D. Tenn.1984), *aff'd in relevant part*, 777 F.2d 1155 (6th Cir.1985).

■ Similarly, the district court found on the strength of Mayer's affidavit that Duchon was paid for hours actually worked, not for the number of hours she "clocked in", which could reflect after-hours personal business or socializing, and that Duchon had failed to rebut this allegation. Again, the district court erred by ignoring Duchon's sworn allegation that she was not always compensated for her work time, her mention of specific dates and company business for which she was not compensated, and her accountant's affidavit that, based on an examination of time cards and paycheck stubs, Duchon was not compensated in accordance with Fair Labor Standards Act requirements. Duchon thus set forth evidence which indicated that she was improperly compensated and which showed "the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1945); *Schultz v. Tarheel Coals, Inc.*, 417 F.2d 583, 584 (6th Cir.1969). This was sufficient to withstand a motion for summary judgment. *See Hodgson v. American Concrete Construction Co., Inc.*, 471 F.2d 1183, 1186 (6th Cir.) (citing *Anderson, supra*), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973). In this connection we also note that Mayer implicitly admitted the possible inaccuracy of Cajon's time records because employees did not clock out before conducting after

hours personal business. Mayer's general attestation that Duchon was properly paid and that time cards "often" did not reflect that "employees" (not necessarily Duchon) conducted personal business after hours only emphasized that there is, indeed, a genuine issue of material fact which renders the case inappropriate for summary judgment.

■ We now examine Duchon's contention that the district court abused its discretion in refusing her permission to amend her complaint. On September 26, 1984, the individual defendants filed a motion to dismiss the action against them for lack of jurisdiction over the subject matter. Rule 12(b)(1), Fed.R.Civ.P. The district court granted the motion on the basis that the court would not exercise pendent jurisdiction over state law claims against these individuals who, as employees of the defendant employer, were not parties to the primary jurisdiction granting Title VII action. The district court also emphasized that the separate and distinct elements of proof in the Title VII and state law claims militated against exercising pendent jurisdiction. Duchon concedes that it was well within the district court's discretion to so rule. Duchon then sought leave to amend her complaint to allege diversity jurisdiction against Coleman, whom she learned had moved out-of-state.[1] This motion was denied. Duchon contends this denial was an abuse of discretion, arguing that the district court has an obligation to exercise diversity jurisdiction when it exists.[2]

---

1. We note that Duchon's earlier memorandum in opposition to defendants' motion to dismiss stated that she had learned of Coleman's move out-of-state as reflected in her previous amendment of his address on the complaint. Nevertheless, Duchon did not move at that time to amend her jurisdictional allegations to include diversity, but inexplicably waited until after defendants' summary judgment motion was granted. Although delay alone is not ordinarily a reason in and of itself to disallow amendment of pleadings, it may be considered in conjunction with other factors, such as, prejudice in denying leave to amend. *See Tefft v. Seward*, 689 F.2d 637 (6th Cir.1982).

2. The lack of complete diversity among the parties under Duchon's proposed amended complaint would not in itself be fatal. Where, as here, there is an independent basis of federal jurisdiction over the non-diverse defendant, the rule of complete diversity in *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), does not require dismissal of the claims against the diverse defendant. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 381, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959).

48

Rule 15(a), Fed.R.Civ.P., mandates that leave to amend "shall be freely given when justice so requires." As stated by the Supreme Court:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendments, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962): *see Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971). In this case it is manifest that the district court did not abuse its discretion in refusing leave to amend. Although Duchon's motion was summarily denied with no stated explanation, the district court's reason was apparent by virtue of its memorandum and opinion of the previous week which emphasized the wholly distinct elements and natures of the Title VII action against Cajon and the defamation and intentional interference with contract claims against Coleman. Contrary to Duchon's contention that the similarity of issues and relationship of the defendants weigh in favor of trying all actions in one proceeding, to try the state claims to a jury while trying the Title VII action to the court would be confusing, complex, and ultimately prejudicial to defendants. Prejudice, as noted in *Foman, supra,* and *Zenith, supra,* is a legitimate basis for denial of leave to amend. Where, as here, the reason for denial is readily apparent it is within the court's discretion to so deny without further explanation. *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 971 (6th Cir.1973),

*cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974).

The judgment of the district court is thus affirmed in part, reversed in part, and remanded to the district court for further proceedings.