840 F.2d 16
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roseann DUCHON, Plaintiff-Appellant,
v.
CAJON COMPANY, Defendant-Appellee.
 No. 86-4009.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1988.
 
 Before WELLFORD, DAVID A. NELSON, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a Title VII sex discrimination case that also involves a claim under the Fair Labor Standards Act. The plaintiff, Roseann Duchon, contends that the defendant, Cajon Company, violated Title VII of the Civil Rights Act of 1964 by treating her differently than a similarly situated male, and that the district court erred in finding otherwise. She contends further that the district court abused its discretion in determining the amount of her recovery for uncompensated overtime under the Fair Labor Standards Act. We shall affirm the judgment on the Title VII claim and remand the case for recalculation of damages on the FLSA claim.
 
 
 2
 * In June of 1981 plaintiff Duchon, a married woman with a number of children, went to work at the Cajon Company as a receptionist. She performed her duties in this position satisfactorily.
 
 
 3
 In 1982 Mrs. Duchon was transferred to a clerical position in the Customer Service and Personnel Department. Her hours were 8:00 a.m. to 4:30 p.m., with half an hour for lunch. Pursuant to company policy, she punched a time clock on arrival and departure. Mrs. Duchon usually worked 40 hours per week, performing overtime only occasionally.
 
 
 4
 Timothy Coleman was a 25-year-old assistant sales manager at Cajon. Several female employees described him as "charming." His superiors evaluated his sales performance as "excellent," and he regularly received merit salary increases. Unlike Mrs. Duchon, Mr. Coleman was unmarried.
 
 
 5
 In December of 1981 Mr. Coleman and Mrs. Duchon attended a lengthy company Christmas party at which they partook of liquid refreshment over an eight-hour period. At some point in the party the two went to Mrs. Duchon's car in the company parking lot so that Mrs. Duchon could get a Christmas present she had brought for Mr. Coleman. Before leaving the car they engaged in kissing and petting for an extended period of time. Both participants agree that there was no sexual intercourse between them on that occasion or at any other time.
 
 
 6
 Mrs. Duchon and Mr. Coleman do not otherwise agree on the nature of their interaction: to her it was the beginning of a "relationship," and to him it was an "incident." In the months that followed the Christmas party Mrs. Duchon developed what can only be termed an obsession with Mr. Coleman, and she pursued him aggressively even after she had become pregnant with her fourth child.
 
 
 7
 In the summer of 1983 Mrs. Duchon wrote Mr. Coleman several long and passionate letters pleading for this attention. She also began to show up uninvited--and unwelcome--at his condominium. Mr. Coleman testified that he believed Mrs. Duchon was carrying a weapon in her purse at one point.
 
 
 8
 In June of 1983 Mr. Coleman informed his superiors at Cajon of his difficulties with Mrs. Duchon. They told him to try to work it out on his own. Cajon management made no effort to confront Mrs. Duchon or to ascertain the accuracy of Coleman's charges.
 
 
 9
 On September 9, 1983, Mrs. Duchon presented herself at Mr. Coleman's condominium and refused to leave until he called the police. Mr. Coleman reported this episode to company management and gave them copies of Mrs. Duchon's letters. On September 13, 1983, Mrs. Duchon's supervisor, Bruce Mayer, gave Mrs. Duchon the option of resigning or being fired. She resigned.
 
 
 10
 Mrs. Duchon subsequently filed sex discrimination charges with the United States Equal Employment Opportunity Commission and the Ohio Civil Rights Commission. On August 20, 1984, she commenced an action in United States District Court for the Northern District of Ohio against Cajon Company, Timothy Coleman, Bruce Mayer, and another Cajon employee, alleging sexual discrimination in violation of 42 U.S.C. Sec. 2000e, defamation, interference with contractual employment relations, and failure to pay regular and overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. Sec. 201.
 
 
 11
 The court dismissed the claims against the individual defendants and the pendent defamation and tortious inference claims. The court granted summary judgment to Cajon on the Title VII claim, finding that Mrs. Duchon had established a prima facie case of sex discrimination but that Cajon's reasons for the discharge (i.e., Mrs. Duchon's pursuit of Coleman and inadequate performance of her job responsibilities) were nondiscriminatory. The court found that Mrs. Duchon had failed to demonstrate the existence of a genuine issue of fact as to whether Cajon's articulated reason was a pretext.
 
 
 12
 Mrs. Duchon appealed to this court, which reversed the grant of summary judgment. Duchon v. Cajon Co., 791 F.2d 43 (6th Cir.1986). This court found that Mrs. Duchon's allegations that she had received regular wage increases, had never been warned or disciplined about her work, and had received unemployment compensation because Cajon had represented her termination as being due to "lack of work," raised a genuine issue of material fact. Id. at 46.
 
 
 13
 On remand, after a bench trial, the district court again found, applying McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), that Mrs. Duchon had established the first three elements of a prima facie sex discrimination case. The burden then shifted to Cajon to articulate a legitimate, non-discriminatory reason for her discharge. Once again Cajon offered as its reasons Mrs. Duchon's conduct with Mr. Coleman and her work performance. Taking its cue from this court, the district court found that Mrs. Duchon's work performance had been satisfactory. The court further found that Mrs. Duchon's relentless pursuit of Mr. Coleman put Cajon at risk of losing a good salesman, and that this was a sufficient business reason to justify the company's request for Mrs. Duchon's resignation. The court found that the company was not using the stated reason as a pretext for unlawful discrimination, and concluded that on the facts presented there was nothing wrong in the company's firing the female employee in hopes of retaining the male employee.
 
 
 14
 On the FLSA claim, the district court found that Cajon had failed to pay Mrs. Duchon for 13.6 hours of overtime in violation of 29 U.S.C. Sec. 207. Pursuant to 29 U.S.C. Sec. 216, the court awarded $263.56 in compensatory and liquidated damages, plus attorney's fees and costs. In determining the number of hours of uncompensated overtime, the court counted only those periods when, as her time cards showed, Mrs. Duchon had punched out more than 30 minutes past her regular quitting time of 4:30 p.m.
 
 II
 
 15
 Mrs. Duchon has failed to persuade us that the trial court's finding on the sex discrimination claim was erroneous. In the cases cited by Mrs. Duchon (Oldfather v. Ohio Dep't of Transportation, No. C-3-84-709 (S.D.Ohio 1986) (unpublished); Williams v. Civiletti, 487 F.Supp. 1387 (D.D.C.1980); and Shore v. Federal Express Corp., 589 F.Supp. 662 (W.D.Tenn.1984), aff'd and remanded in part, 777 F.2d 1155 (6th Cir.1985)) male supervisors were found to have been sleeping with female subordinates. The subordinates were transferred or discharged, while the superiors were not. In the case at bar Mrs. Duchon neither reported to Mr. Coleman nor slept with him. What she did do, over an extended period of time, was to make such a nuisance of herself that there was no way both employees could be kept on the payroll. Someone had to go, and it was not unlawful for Cajon--which was running a business, not a social service agency--to decide that Mrs. Duchon ought to be that someone.
 
 
 16
 Mrs. Duchon argues that the district court wrongfully failed to consider circumstantial evidence of systemic discrimination. The evidence was admitted at trial without objection, and Mrs. Duchon's principal complaint on this score appears to be that the trial court failed to find the evidence persuasive. The contention has no merit.
 
 
 17
 Mrs. Duchon also complains that before dismissing her the company ought to have given her an opportunity to confront Mr. Coleman, refute his charges, and remedy her conduct. The trial court found that the content of the letters written by Mrs. Duchon to Mr. Coleman "strongly suggests that a lesser form of discipline would not successfully salvage both Coleman and Duchon as productive employees." The letters--which we shall refrain from quoting--speak for themselves, and they clearly support the district court's conclusion. That conclusion finds further support in the fact that Mrs. Duchon continued to pursue Mr. Coleman even after her discharge.
 
 III
 
 18
 We agree with Mrs. Duchon's assertion that the district court erred in calculating the amount of overtime to which she is entitled under the Fair Labor Standards Act, 29 U.S.C. Sec. 207. The Act requires an employer to pay its covered employees at an overtime rate not less than one and one-half times their regular rate. Overtime is defined as any work performed over forty hours in one week; however, an employee need not be paid for otherwise compensable time if it is "minimal." To determine if the employee's action falls within the de minimis rule, the court must look to the FLSA, the Portal-to-Portal Act of 1947, and the relevant caselaw.
 
 
 19
 In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the Supreme Court held that employees preparing for work after punching in on the employer's time clock are entitled to compensation under the FLSA. The Court found that the statutory work week includes all time during which an employee is required to be on the employer's premises on duty or at a prescribed workplace. Time thus spent must be paid for, but compensation may be limited by the de minimis rule where "the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." See id. at 692.
 
 
 20
 In response to the Mt. Clemens decision, Congress passed the Portal-to-Portal Act of 1947, 29 U.S.C. Sec. 251. Section 4 of the Act, 29 U.S.C. Sec. 254, provides that an employer shall not be liable for minimum wages or overtime compensation for:
 
 
 21
 "... (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."
 
 
 22
 In Steiner v. Mitchell, 350 U.S. 247 (1956), the Supreme Court read this provision as suggesting that employee activities performed either before or after the regular work shift are "compensable under the portal-to-portal provisions of the Fair Labor Standards Act, if those activities are an integral and indispensable part of the principal activities" for which the person is employed. Id. at 256.
 
 
 23
 Although "postliminary" periods spent by an employee at the workplace in his own interest are not compensable overtime, see Jackson v. Air Reduction Co., 402 F.2d 521 (6th Cir.1968), courts have given a liberal construction to the term "principal activities." See, e.g., Dunlop v. City Electric, Inc., 527 F.2d 394, 399 (5th Cir.1976). To decide whether an activity is an "integral and undispensable part" of a "principal activity," the court must determine whether the activity is "performed as part of the regular work of the employees in the ordinary course of business." Id. at 401.
 
 
 24
 In the case at bar, Mrs. Duchon testified that on those occasions when her time card showed she had clocked out after 4:30 p.m., she was working to finish her customer service duties for the day. Her supervisor, Bruce Mayer, testified that he did not notice that Mrs. Duchon was working extra time for the company, and he said that "a lot" of employees clocked out late for personal reasons. The district court found the testimony of both Mrs. Duchon and Mr. Mayer to be "less than trustworthy."
 
 
 25
 Observing that overtime had been previously approved for periods extending past 5:00 p.m. rather than for shorter periods, the district court found that Mrs. Duchon was "doing the work of the company" for which she was entitled to overtime compensation whenever she worked past 5:00 p.m. The court "arbitrarily" decided not to award overtime pay for overtime periods of less than 30 minutes.
 
 
 26
 In a suit brought under the FLSA, the burden of proving that an employee performed work for which he or she was not properly compensated rests with the employee. Mt. Clemens Pottery Co., 328 U.S. at 686-87. The employee sustains this burden
 
 
 27
 "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 687-88 (citation omitted).
 
 
 28
 See also Schultz v. Tarheel Coals, Inc., 417 F.2d 583, 584 (6th Cir.1969), quoting Mt. Clemens Pottery, supra.
 
 
 29
 Mrs. Duchon introduced evidence sufficient to meet her burden of proof under this standard. Cajon has failed to produce evidence of the precise amount of work performed and has not otherwise negatived the inference to which Mrs. Duchon's time cards and testimony gave rise. Cajon has not demonstrated that what Mrs. Duchon was doing during the recorded overtime periods of less than 30 minutes was any less "integral" or "indispensible" to her principal work activities than what she was doing during the longer periods of after-hours time on the clock. The district court erred in arbitrarily deciding that intervals of less than 30 minutes were de minimis and thus not compensable.
 
 IV
 
 30
 For the foregoing reasons, we AFFIRM the judgment of the district court on the Title VII claim, REVERSE the judgment on the FLSA claim, and REMAND the case to the district court for a recalculation of overtime wages and liquidated damages in accordance with 29 U.S.C. Sec. 216 and this decision.