849 F.2d 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sequoyah Lonedeer CONLEY, Plaintiff-Appellant,
v.
William BRANSTON, et al., Defendants-Appellees.
 No. 87-3692.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1988.
 
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Sequoyah Lonedeer Conley challenges the district court's dismissal of his 42 U.S.C. Sec. 1983 civil rights complaint against appellees, Capt. Cliffton and C. Jones, corrections officers at Orient Correctional Institution (OCI). In his complaint, he alleged that prison policies had unconstitutionally denied him his free exercise rights under the first amendment, as applied to the states through the fourteenth amendment. For the following reasons, we reverse the judgment of the district court.
 
 I.
 
 2
 On March 4, 1987, Conley, an inmate at OCI, filed a complaint charging Cliffton and Jones[1] with violating his first amendment right to the free exercise of his Cherokee religion. Specifically, Conley alleged that on December 24, 1986, December 26, 1986, and January 31, 1987, he was ordered out of the central dining room, and consequently denied meals, for wearing a Cherokee religious headband. Further, on January 31, 1987, Conley asserted that while he was eating in the central dining room, Corrections Officer William Branston ordered him to either remove his headband or leave the dining room. When he refused to do either, Conley stated that Branston handcuffed him and escorted him to the Administrative Office where Cliffton showed him an inter-office memo dated January 30, 1987, which prohibited the wearing of headgear in the central dining room.[2]
 
 
 3
 Finally, in his complaint, Conley sought seven million dollars in damages against each appellee and requested injunctive relief against the prison officials which would permit him to wear his Cherokee headband at all times, and at all places, within the institution.
 
 
 4
 Additionally, on March 4, 1987, Conley moved for a temporary restraining order and preliminary injunction against the appellees. He asked that the district court restrain prison officials from refusing to allow him to wear his Cherokee headband while eating in the central dining room. With his motion, he submitted the affidavit of his father, James E. Conley, who stated that his son is a blood descendent of a Cherokee Indian and is a member of a Cherokee tribe.
 
 
 5
 In response, appellees requested that the district court deny Conley injunctive relief. They argued that penological objectives outweigh Conley's right to express his Cherokee religion by wearing a headband. Attached to their response, appellees submitted the affidavit of Thomas Stickrath, Superintendent of OCI, in which he explained the policies behind the prohibition on the wearing of headgear in the dining hall. He stated that the policy was justified for the following reasons: (1) it prevented the inmates from taking silverware, which could be made into weapons, food, which could be made into alcohol, and drugs, which could be more easily hidden in headgear; (2) it was necessary to ensure orderly operation of the dining room by mandating that all inmates be similarly dressed; (3) it prevented homosexual attack in the dining hall; (4) it prevented inmates from going through the food line twice; once with headgear and once without; and (5) the wearing of headgear would require stricter scrutiny by prison officials of inmates going through the line and would result in more tension between guards and inmates.
 
 
 6
 On April 23, 1987, appellees filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Conley's complaint for failure to state a claim upon which relief could be granted. In support of their motion, they incorporated their response to Conley's motion for a restraining order and injunctive relief. For his response, Conley contradicted Stickrath's claims. Specifically, he asserted that in his headband, which measures one-inch wide by one-eighth inch thick, it would be virtually impossible to conceal contraband such as food and silverware, and that he has had no prior history of dealing with drugs or alcohol during his confinement. Drugs, moreover, are concealed in socks and pockets rather than headbands. He added that tension between guards and inmates is already volatile and would not be enhanced by his wearing a headband. Conley pointed out that prisoner identification to avoid two trips through the food line is conducted pursuant to an ID card which each prisoner carries. Conley claims that his ID card portrays him wearing a headband. Finally, he stated that although he has worn his headband since he entered the prison in 1985, he has never been the target of a homosexual attack.
 
 
 7
 On July 10, 1987, the district court granted appellees' motion to dismiss. The court relied on the affidavit of Stickrath in determining that OCI's regulation furthers the important governmental interest of prison security. The court disagreed with Conley's assertion that no contraband could be hidden in a headband one-inch wide and one-eighth inch thick. The court further found that such limitation is no greater than necessary to protect the governmental interest involved since Conley is permitted, by his own admission, to wear his headband at all other times and at all other places at OCI. This timely appeal followed.
 
 
 8
 On appeal, Conley argues that the district court erred in granting judgment in favor of appellees on his 42 U.S.C. Sec. 1983 civil rights complaint in which he charged appellees with violating his first amendment right to the free exercise of his religion by prohibiting him from wearing his Cherokee headband in the central dining room of OCI.
 
 II.
 
 9
 In its order dismissing Conley's civil rights complaint for failure to state a claim upon which relief could be granted, the district court referred to matters outside the pleadings; specifically, it referred to Stickrath's affidavit. In such case, Fed.R.Civ.P. 12(b) directs that the motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Fed.R.Civ.P. 56.
 
 
 10
 Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. "All facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir.1986); Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979).
 
 Fed.R.Civ.P. 56(e) provides that:
 
 11
 "[W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."
 
 
 12
 Moreover, this court, in R.E. Cruise, Inc. v. Bruggeman, 508 F.2d 415, 416 (6th Cir.1975) (per curiam), determined that summary judgment was proper where the facts alleged in the complaint were directly controverted in the affidavits supporting the defendant's summary judgment motion and where the plaintiff's version of the facts was not presented in any deposition, affidavit, or other document on file, except the pleadings. As recently enunciated by the Supreme Court, in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (emphasis in the original). The Court continued, "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.
 
 
 13
 In the present case, the law governing whether prison regulations impinge upon an inmate's First Amendment rights has been recently set forth by the Supreme Court in Turner v. Safley, 107 S.Ct. 2254 (1987). In Turner, the Court determined that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 2261. Such approach enables prison officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Id. at 2262. The Court outlined several factors in determining the reasonableness of a prison regulation. First, there must be a rational relationship between the regulation and the asserted government interest. A second relevant factor is whether alternative avenues remain available to the inmate to express his asserted right. A third factor is the impact accommodation of the asserted right will have on the guards, other inmates, and the allocation of prison resources. Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.
 
 
 14
 Upon reviewing the analysis set out in Turner as well as the analysis established for the determination of summary judgment motions, we conclude that the district court improperly granted summary judgment in favor of the appellees and improperly dismissed Conley's civil rights actions against appellees. As outlined earlier, summary judgment may be granted only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. In the present case, a genuine issue of material fact exists as to whether contraband could be concealed in a headband such as Conley's which measures only one-inch wide by one-eighth inch thick.
 
 
 15
 In his affidavit, Stickrath stated that one of the penological objectives of the OCI regulation was the elimination of the smuggling of contraband such as silverware, food, and drugs. In his response to this affidavit, Conley asserted that in a headband the size of his he could not conceal such objects. He added that inmates conceal such items in their pockets and socks instead. The district court, in its opinion, expressly disagreed with Conley's assertion. It stated that "such a headband could quite possibly conceal many types of contraband." The district court's explicit disagreement with Conley's assertion demonstrates the existence of a genuine issue of material fact as to whether Conley's headband could be used to conceal the contraband about which the prison officials are most apprehensive. This question of fact, moreover, brings into focus the issue of whether OCI's regulation is reasonably related to the penological objective of prison security and the reduction in the smuggling of contraband.
 
 
 16
 Because we find that the record demonstrates the existence of a genuine issue of material fact, we conclude that the district court improperly granted summary judgment in favor of appellees. The judgment of the district court is therefore REVERSED and this cause is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The record indicates that Conley also named Corrections Officer William Branston as a defendant in this action but that he never obtained service of process on Branston
 
 
 [2]
 This memo, issued by Major K.D. Bucy, Chief Custody Officer, reads in its entirety:
 All inmates entering CDR [central dining room] during meal periods are to be dressed in the Uniform of the Day. NO headgear is permitted to be worn in the CDR other than that which has been established for CDR Inmate Workers. There are NO exceptions to this order, irregardless of an inmate's claim that his headgear is a religious artifact, and he is required by religion to wear it. [emphasis in the original].