974 F.2d 1338
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thresa KUHN, Plaintiff-Appellant,
v.
ISLAND CREEK COAL COMPANY, Defendant-Appellee.
 No. 91-6325.
 United States Court of Appeals, Sixth Circuit.
 Aug. 27, 1992.
 
 Before KENNEDY, DAVID R. NELSON and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Thresa Kuhn ("Kuhn"), appeals the district court's grant of summary judgment to defendant-appellee, Island Creek Coal Company, on her disparate treatment and disparate impact claims in this action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. We affirm.
 
 I.
 
 2
 In July of 1987, Kuhn contacted Island Creek Coal Company ("Island Creek") regarding possible employment. Kuhn submitted a resume and applied for four positions with Island Creek: rod person, safety inspector, standards control inspector, and mine inspector.[1] In October of 1987, Kuhn interviewed with Island Creek, as did a number of other applicants. Island Creek considered Kuhn for, but did not offer her employment in, the positions of rod person, safety inspector, and standards control inspector. Island Creek did not consider Kuhn for the position of mine inspector because she failed to meet the minimum requirement of ten years' mining experience.[2]
 
 
 3
 A safety inspector position became available in September of 1987 when Darold Gamblin, who formerly had held the position, was promoted. However, because Gamblin was demoted back to the safety inspector position shortly thereafter, none of the interviewees was offered the position. The two rod person positions[3] available required a minimum of two years' experience in that area. Although Kuhn only had one to two months' rod person experience, Island Creek decided to interview her for the position because, based on her application and resume, including the fact that she had taken two college courses in surveying, it was believed she might be qualified for the position. However, Island Creek subsequently hired Don Johnson and Don Bell for the two rod person positions. Johnson had ten years' surveying experience and three years' rod person experience and was a registered surveyor. Bell had eight years' engineering and surveying experience and, like Kuhn, held a B.S. degree in mine management.
 
 
 4
 The standards control inspector position, which was created when Island Creek restructured its safety department, required qualifications similar to those required for the established safety inspector position. These qualifications included three years' underground mining experience, mine foreman certification, and Mine Safety and Health Administration ("MSHA") instruction certification. Therefore, when this new position was created, rather than interviewing additional applicants, Island Creek simply reviewed the files of the applicants for the safety inspector position, including Kuhn. Jeffrey Porter was hired to fill this position. Porter had eight years' mining experience, was certified as a Kentucky mine foreman, had conducted MSHA training courses for a number of Island Creek employees, including individuals involved in the hiring process for this position, and was familiar with the operation of all the Island Creek mining equipment. Kuhn, on the other hand, had three years' experience and MSHA certification, but did not have Kentucky mine foreman certification[4] or machinery experience equivalent to Porter's.
 
 
 5
 On September 16, 1988, Kuhn filed in United States District Court for the Western District of Kentucky a complaint alleging that Island Creek had discriminated against her on the basis of her sex in not hiring her for any of the four positions. On November 29, 1989, Kuhn moved for partial summary judgment on her mine inspector discrimination claim. The following day, Island Creek moved for summary judgment as to the safety inspector, rod person, and standards control inspector positions. On August 28, 1990, the district court denied Kuhn's motion on the ground that the record was not fully developed concerning the alleged similarity of the safety inspector and mine inspector positions. In a separate order entered the same day, the court also granted Island Creek's motion. On January 31, 1991, Island Creek moved for summary judgment on the mine inspector claim and, on October 3, 1991, the district court granted summary judgment on this claim and entered a final order from which Kuhn timely appealed.
 
 II.
 
 6
 We review de novo the district court's grant of summary judgment. See, e.g., Wilmer v. Tennessee Eastman Co., 919 F.2d 1160, 1162 (6th Cir.1990). Summary judgment may, where appropriate, be granted in a Title VII case. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1067 (6th Cir.), cert. denied, 111 S.Ct. 516 (1990). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact is on the party moving for summary judgment. However, where, as here, the burden of proof at trial will be on the nonmoving party, the moving party can meet its burden by showing an absence of evidence to support an essential element, for which the nonmoving party will bear the burden of proof, of the nonmoving party's case. Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmoving party, who, to avoid summary judgment, must demonstrate that a reasonable trier of fact could find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
 
 
 7
 Kuhn has raised claims of sex discrimination predicated on both disparate treatment and disparate impact theories. We address first the disparate treatment claim, which has been raised as to the positions of rod person, safety inspector, and standards control inspector.[5] A plaintiff can establish disparate treatment through either direct or indirect evidence of discrimination. Kuhn has not come forward with any direct evidence that Island Creek discriminated against her on the basis of her sex. In the absence of direct evidence of discrimination, the framework for adjudication of a Title VII claim is set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).[6]
 
 
 8
 Under this framework, Kuhn first must make out a prima facie case of discrimination by showing that i) she was a member of a protected class; ii) she applied and was qualified for a position that was open; iii) she was rejected; and iv) after her rejection, the position remained open, and the employer continued to seek applicants having her qualifications. McDonnell Douglas, 411 U.S. at 802. Kuhn established that she met all these elements, including possessing the minimum qualifications, only as to the standards control inspector position. Thus, she has made out a prima facie case only as to this position.[7]
 
 
 9
 Kuhn failed to make out a prima facie case as to the positions of rod person and safety inspector. She did not demonstrate that she met the required minimum of two years' experience as a rod person and, therefore, she did not show that she was qualified for the position. With respect to the safety inspector position, because the position was filled through the demotion of Darold Gamblin back into his former position, none of the applicants, male or female, was selected to fill the position. Island Creek did not continue to seek applicants and thus did not hire an applicant from outside the protected class. Therefore, under the above analysis, Kuhn has not made out a prima facie case as to either of these positions.[8]
 
 
 10
 Merely making out a prima facie case of disparate treatment does not, without more, save a plaintiff from summary judgment. Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir.1989). Unless the plaintiff then is able to "adduce sufficient evidence from which a reasonable juror could conclude that 'pretext' existed, the district court should enter summary judgment in favor of the defendant." Mays v. Chicago Sun-Times, 865 F.2d 134, 137 (7th Cir.1989). See also Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir.1986). Once Kuhn made out a prima facie case as to the standards control inspector position, the burden shifted to Island Creek to articulate a legitimate, nondiscriminatory reason for Kuhn's rejection. Burdine, 450 U.S. at 254-55. Island Creek's proffered reason, that it hired Jeffrey Porter because he was the individual best qualified for the position, is clearly legitimate. Once Island Creek articulated this legitimate, nondiscriminatory reason, any presumption of discrimination created by the prima facie case was negated, and Kuhn then was required to meet her burden of persuasion by showing that the asserted reason was pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256.
 
 
 11
 Kuhn essentially attempted to meet this burden by alleging that Island Creek either should have used different selection criteria or should have weighed differently the criteria it did use in selecting other individuals for the available positions.[9] Kuhn has misconstrued the analysis. The role of a court is not to interfere with an employer's right to exercise its bona fide business judgment in selecting employees for the workforce. Ramos v. Roche Prod., Inc., 936 F.2d 43, 47-48 (1st Cir.), cert. denied sub nom. Rossy v. Roche Prod., Inc., 112 S.Ct. 379 (1991). The issue thus is not whether Island Creek made objectively wise hiring decisions, but whether the plaintiff has shown that the selection process employed was a pretext for discrimination.[10] Kuhn has not come forward with evidence from which a reasonable juror could conclude that Island Creek intentionally discriminated against Kuhn.[11] Therefore, summary judgment also was appropriate on the standards control inspector disparate treatment claim.
 
 
 12
 We turn now to Kuhn's disparate impact claims.[12] Kuhn contends that the Civil Rights Act of 1991 ("Act"),[13] which was enacted on November 21, 1991, should be applied retroactively to the present case, which arose prior to the date of enactment. However, this issue has been settled adversely to Kuhn's position in this Circuit by our decision in Vogel v. City of Cincinnati, 959 F.2d 594, 598 (6th Cir.1992) (holding that the Act does not apply retroactively to a claim for damages resulting from a city's hiring policy), petition for cert. filed (June 11, 1992). Therefore, because the Act is inapplicable, we examine Kuhn's disparate impact claims under the law as it existed prior to passage of the Act.
 
 
 13
 In Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642 (1989), the Supreme Court delineated the appropriate analysis for a disparate impact case under Title VII. The Court stated that, although a plaintiff may rely on statistical proof to make out a prima facie case of disparate impact, the proper statistical comparison typically is "between the [sexual] composition of the qualified persons in the labor market and the persons holding at-issue jobs...." Id. at 650. Where the absence of protected employees in the at-issue jobs is due, not to discriminatory hiring practices, but to a scarcity of qualified applicants from this protected group, the hiring practices of the employer have not had an unlawful disparate impact. Id. at 656-57. In the present case, Kuhn did not show a disparity between the percentage of qualified female applicants and the percentage of females holding the at-issue jobs. Instead, she relied on the type of disparity expressly found not probative by the Supreme Court, namely, the "bottom line" disparity between the percentage of males and females actually holding the rod person, safety inspector, standards control inspector, and mine inspector positions. Therefore, Kuhn has failed to make out a prima facie case, and summary judgment on the disparate impact claim is appropriate.
 
 
 14
 Even were Kuhn able to make out a prima facie disparate impact case, however, Island Creek has come forward with evidence that its hiring process "serves, in a significant way, the legitimate employment goals of the employer." Wards Cove, 490 U.S. at 659. With respect to the safety inspector position, the decision to demote Darold Gamblin back into a position that he formerly held, rather than hire one of the applicants, served Island Creek's stated goal of filling the available positions with the most qualified individuals available. The decision to hire Don Bell, Don Johnson, and Jeffrey Porter to fill the positions of rod person and standards control inspector, based on their superior experience and other qualifications, served the same legitimate goal.
 
 
 15
 Finally the decision not to consider Kuhn for the mine inspector position, because she lacked ten years' mining experience, was based on two legitimate considerations. First, given the significant responsibilities of a mine inspector, substantial mining experience, including supervisory experience, was deemed necessary to enable mine inspectors to anticipate and recognize potential problems. Second, Island Creek attempted to parallel the ten-years' experience requirement for Kentucky state mine inspectors in order to ensure both credibility and a good peer relationship with the state inspectors.
 
 
 16
 Once Island Creek had met its burden by producing a business justification for its selection criteria, Kuhn could only prevail by coming forward with an equally effective alternative hiring practice that would result in a less disparate impact. Kuhn has not demonstrated an equally effective alternative to the selection criteria on which Island Creek relied.[14] Therefore, even if Kuhn had established a prima facie case as to her disparate impact claims, summary judgment properly was granted to Island Creek. See Abbott v. Federal Forge, Inc., 912 F.2d 867, 875-77 (6th Cir.1990).
 
 III.
 
 17
 Summary judgment properly was granted to Island Creek on all of Kuhn's sex discrimination claims. The judgment of the district court is affirmed.
 
 
 
 [1]
 Between late summer of 1987 and early 1988, Island Creek restructured its safety department. As a result of this restructuring, the new positions of standards control inspector and mine inspector were created. The positions of rod person and safety inspector existed prior to restructuring
 
 
 [2]
 Kuhn had approximately three years' mining experience. As of February 1990, the mine inspector position no longer exists at Island Creek's Western Kentucky Division
 
 
 [3]
 A rod person is a member of an underground surveying crew who assists in making underground mine measurements
 
 
 [4]
 Kuhn held the Illinois equivalent of Kentucky mine foreman certification. K.R.S. § 351.120(8) grants reciprocity, subject to the approval of the commissioner, to anyone holding mine foreman certification in another state. However, reciprocity is only effective for a maximum of 90 days. Id. Kuhn did have a college degree, which Porter lacked
 
 
 [5]
 In its October 3, 1991, Opinion, the district court determined that, because Kuhn, in her initial summary judgment motion, had failed to allege a disparate treatment theory as to the mine inspector position, it was unnecessary for the court to address this claim. We agree that Kuhn failed to raise this claim in the district court and find that this failure constituted a waiver of her right to raise the issue on appeal. United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992)
 
 
 [6]
 This court has held that statistical disparity, if sufficiently probative, can establish a prima facie case of disparate treatment. Equal Employment Opportunity Comm'n v. Ball, 661 F.2d 531, 537 (6th Cir.1981). In that case, the statistical disparity was between promotion rates of male and female employees who already had been hired. By having been hired, those employees, in effect, had established their qualifications. Here, however, the statistical evidence presented by Kuhn relates solely to the relative percentages of males and females actually employed in the at-issue jobs at Island Creek, and not to the relative percentages of males and females in the pool of applicants qualified for these jobs. In the absence of admissible statistical evidence relating to the qualified applicant pool, we cannot draw valid inferences as to the reason for any statistical disparity between male and female employees in these at-issue jobs. See, e.g., City of Richmond v. J.A. Croson Co., 488 U.S. 469, 501-02 (1989)
 
 
 [7]
 Island Creek concedes that Kuhn was minimally qualified for the standards control inspector position
 
 
 [8]
 Even were we to conclude that Kuhn had made out a prima facie case with respect to the safety inspector or rod person positions, the result would not change. Island Creek articulated a legitimate, nondiscriminatory reason for hiring Don Johnson and Don Bell to fill the available rod person positions, namely, that they possessed qualifications for these positions that were superior to those of Kuhn. Likewise, Island Creek produced evidence to show that Darold Gamblin had considerably more mining experience than Kuhn, including a number of years' experience as a safety inspector. Kuhn has failed to raise a genuine issue of material fact as to the nonpretextual nature of Island Creek's stated reasons. Therefore, even had Kuhn made out a prima facie case, summary judgment still would be appropriate on these claims
 
 
 [9]
 For example, Kuhn contends that Island Creek was incorrect in stating that she was a greater employment risk than Porter because she changed jobs more frequently than Porter. However, Kuhn's job changes were generally voluntary, whereas Porter's were due to layoffs or other involuntary reasons. Kuhn also contends that she had mine certification equivalent to Porter's. However, her Illinois certification was good in Kentucky for only a 90-day period, after which time she could continue to be certified only by passing the Kentucky mine inspector exam. Kuhn also contends that she had superior education and experience for the position of standards control inspector. However, Porter had considerably more actual mining experience, and the fact that, unlike Kuhn, he lacked a college degree was not significant because it was not one of the critical selection criteria. Kuhn further contends that, had she been given the chance, she could have demonstrated that she had a training style as impressive as Porter's. However, Island Creek was under no affirmative obligation to design a selection process that ensured her the same access to Island Creek management employees as Porter had had as part of his job with the company prior to his being selected for the standards control position
 
 
 [10]
 Where an employer has hired a demonstrably more qualified individual from outside the protected class rather than a less qualified individual from within the class, this is evidence that the hiring decision was nonpretextual. Scales v. J.C. Bradford and Co., 925 F.2d 901, 906 (6th Cir.1991) (finding not clearly erroneous the district court's determination that, because the individual hired was more qualified, no pretext was shown)
 
 
 [11]
 Kuhn's evidence includes deposition testimony of a number of women who alleged that they had received discriminatory treatment at the hands of Island Creek. However, this testimony does not support Kuhn's claim that Island Creek discriminated against her through its hiring practices
 
 
 [12]
 The Supreme Court has held that Title VII prohibits "not only overt discrimination but also practices that are fair in form but discriminatory in practice." Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). This theory of liability is known as the "disparate impact" theory
 
 
 [13]
 A plaintiff who brings an action under the Act may recover compensatory and punitive damages and also may receive a jury trial
 
 
 [14]
 Kuhn alleges that, because few women have the requisite ten years' mining experience, few women will be able to qualify for the mine inspector position, and that this requirement to qualify for the position produces a discriminatory impact on women. Even if we accept this as true, however, Island Creek could not be held liable unless Kuhn could show that a specific Island Creek employment practice had a significant disparate impact on the women applicants for the at-issue jobs. Wards Cove, 490 U.S. at 657. Kuhn has failed to meet this burden
 Kuhn suggests as an alternative to the ten-year requirement that Island Creek could, following the framework of the analogous Kentucky statute, use a combination of education and experience to set minimum qualifications for mine inspectors. However, K.R.S. § 351.090 provides that a maximum of three years' education may be substituted for three years' experience. Under this formula, Kuhn would still fall well short of the minimum ten years.
 Finally, as the Supreme Court has counseled, because courts are "generally less competent than employers to restructure business practices, ... the judiciary should proceed with care before mandating that an employer must adopt a plaintiff's alternate selection or hiring practice in response to a Title VII suit." Id. at 661 (quoting Furnco Constr. Co. v. Waters, 438 U.S. 567, 578 (1978)).