Frederick HENDERSON,
Plaintiff–Appellant,

v.

Bill MARTIN, Director of Prisons;
et al., Defendants–Appellees.

No. 01–2463.

United States Court of Appeals,
Sixth Circuit.

Aug. 4, 2003.

Before MERRITT and BATCHELDER, Circuit Judges; and DUPLANTIER,* District Judge.

BATCHELDER, Circuit Judge.

Appellant Frederick Henderson, a prisoner in custody of the Michigan Department of Corrections, brings this § 1983 claim for damages and injunctive relief

---

* The Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

against Bill Martin, the Director of Prisons, and several prison officials at the Lakeland Correctional Facility. Henderson complains of unwanted exposure to second-hand tobacco smoke. The district court held that Henderson's request for injunctive relief, including transfer to another facility, is moot, and granted summary judgment to the defendants on Henderson's Eighth Amendment claim because Henderson could show neither that he had a serious medical need for a smoke-free environment nor that prison officials were deliberately indifferent to his medical needs. We now affirm.

## I

At the time the incidents giving rise to this lawsuit occurred. Henderson was incarcerated at the Lakeland Correctional Facility ("LCF") in Coldwater. Michigan, although he had been transferred to the Florence Crane prison facility by the time the district court considered his complaint. From July 17, 1998, to November 11, 1999. Henderson was placed in LCF's "F-2" housing unit, during which time he claims that he was exposed to unreasonably high levels of environmental tobacco smoke ("ETS"). As a result of this exposure, Henderson "suffered pain from the problems of breathing, head-aches [sic], and the burning of his inner nose." At one point, he was placed in a cubicle with four smokers, although the staff in F-2 moved him to several different bunks within the unit in response to his complaints.

The record indicates that Henderson made at least twelve visits to health services at LCF, where medical staff told him that "this is not a health care issue." and informed him that he could take over-the-counter aspirin and antihistamines for his headaches. At one point, prison medical personnel gave Henderson a steroid inhaler to help relieve his respiratory problems, although there is no evidence that they ever diagnosed him with a medical condition or ordered that he be placed in a smoke-free environment. Henderson asked for a transfer to smoke-free housing, but his request was denied on the grounds that all housing units at LCF are officially designated as smoke-free; the LCF staff purportedly enforce the non-smoking rules "to the best of their ability," although Henderson alleges lax enforcement of this policy.

On April 3, 2000, Henderson, proceeding pro se, filed a complaint in the Eastern District of Michigan against the named defendants, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment and violations of the Michigan constitution, and requesting an injunction ordering that he be transferred to a smoke-free housing unit. The defendants moved to dismiss the case pursuant to a portion of the Prison Litigation Reform Act which states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). After the case was transferred to the Western District of Michigan, the district court denied the defendants' motion to dismiss on exhaustion grounds because prison officials had informed Henderson that his claim was properly raised through the Warden's Forum, Henderson had raised the claim there, and he could take no further steps to pursue an administrative remedy at LCF.

The defendants then moved for summary judgment, which the district court granted on the grounds that Henderson had failed to present any evidence showing that he had a serious medical condition, and because the prison did not manifest

deliberate indifference towards Henderson since it had in place a no-smoking policy, even if that policy was imperfectly enforced. The court also ruled Henderson's request for injunctive relief moot because he was no longer housed at LCF. Finally, the court refused to exercise its supplemental jurisdiction over the Michigan constitutional claims. On appeal, Henderson challenges the district court's holding that his claim for injunctive relief is moot, and its denial of his Eighth Amendment claim. The defendants continue to argue that Henderson's claims should have been dismissed pursuant to the Prison Litigation Reform Act.

## II

■ Because we find no error in the district court's determination that Henderson adequately pursued and exhausted his administrative remedies before bringing suit, we affirm that part of the district court's order, and proceed to the merits of the claims on appeal. We first address Henderson's contention that the district court erred in holding that since Henderson had been transferred from LCF to the Florence Crane prison facility by the time the court ruled on the summary judgment motion, his request for an injunction ordering that he be transferred from LCF to a smoke-free facility was moot. Henderson argues on appeal that his request for an injunction is not moot, for while he is no longer housed at LCF, he still suffers from exposure to ETS at his current location, and Bill Martin is still the Director of Prisons and therefore still has the ultimate responsibility for Henderson's living conditions.

We review de novo a district court's finding that a plaintiff's claim is moot. *Greater Detroit Res. Recovery Auth. v. United States EPA,* 916 F.2d 317, 319 (6th Cir.1990). In *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996), we held that a prisoner's claim for declaratory and injunctive relief against certain prison officials became moot once the prisoner was transferred from the prison of which he complained to a different facility. To the extent that Henderson asks for injunctive relief against officials at LCF, his claim is moot. Moreover, he cannot preserve his claim merely by listing Bill Martin, the Director of Prisons, as a defendant. This Court has held that § 1983 liability cannot be based upon a theory of respondeat superior: "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 81 (6th Cir.1995) (citations omitted). Henderson has made no showing that defendant Martin had any knowledge of his difficulties with ETS and what may have been the practice of the prison staff at LCF to disregard or fail to enforce the no-smoking policies.

## III

■ In addition to injunctive relief, Henderson seeks damages based upon his Eighth Amendment right to be free of cruel and unusual punishment, which, he claims, the defendants violated by disregarding his request that they enforce the non-smoking rules or transfer him to a smoke-free living area. We review de novo the district court's grant of summary judgment to the defendants on Henderson's Eighth Amendment claim. *Brown v. Crowley,* 312 F.3d 782, 787 (6th Cir.2002).

The test for determining whether a prisoner's Eighth Amendment rights have been violated due to ETS exposure contains both an objective and a subjective component. *Helling v. McKinney,* 509

U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The objective component requires the prisoner to show that he is "being exposed to unreasonably high levels of ETS," and proof "that he will be exposed to unreasonable risk with respect to his future health or that he is now entitled to an injunction." *Id.* at 35–36, 113 S.Ct. 2475. That is, he must show that his medical needs are "sufficiently serious." *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992). Moreover, the objective component

> requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling,* 509 U.S. at 36, 113 S.Ct. 2475. The subjective component requires the prisoner to show that the prison authorities knew of and manifested deliberate indifference towards the inmate's health problems. *Id.* at 32, 36, 113 S.Ct. 2475.

In order to meet the objective factor of the *Helling* test, Henderson must show that his exposure to ETS went beyond "mere discomfort or inconvenience" to the level of being a "serious health threat." *Hunt,* 974 F.2d at 735. He claims that he "suffered pain from the problems of breathing, head-aches, and the burning of his inner nose," as well as coughing and other cold-like symptoms. Despite at least twelve visits to health services at LCF, the most significant medical treatment Henderson received was a prescription for a steroid inhaler to help with his cough. Medical personnel also told Henderson that he could take over-the-counter pain killers and antihistamines to alleviate his symptoms. However, he never mentions

being diagnosed with any medical condition.

In *Reilly v. Grayson,* 310 F.3d 519 (6th Cir.2002), we upheld a district court's award of compensatory and punitive damages to an inmate who suffered from asthma, and whose requests to be placed in a smoke-free environment were consistently disregarded by prison officials. Unlike the inmate in *Reilly,* Henderson has made no showing of any serious medical condition like asthma that was significantly exacerbated by exposure to ETS. He did suffer some discomfort, but the level of ETS to which he was exposed was neither "unreasonably high" nor was the exposure "so grave that it violate[d] contemporary standards of decency[.]" *Helling,* 509 U.S. at 36, 113 S.Ct. 2475; *see also Henderson v. Sheahan,* 196 F.3d 839, 842 (7th Cir.1999) (noting that "conspicuously absent from [plaintiff's] complaint is any allegation that a physician ever recommended or ordered that he be removed from the allegedly smoky tier in which he was housed and placed in a non-smoking environment"); *Scott v. District of Columbia,* 139 F.3d 940, 942–43 (D.C.Cir.1998) (dismissing the inmates' claims on several grounds, including failure to present any evidence of "unreasonably high" levels of smoke or evidence that the headaches and chest pains in one of the plaintiffs, or exacerbation of asthma conditions in the other, was tied to the ETS and constituted a serious health risk). Henderson's discomfort is not sufficiently serious to bring him under the protection of the Eighth Amendment.

Even if Henderson could meet the objective element of *Helling,* he cannot meet its subjective element: deliberate indifference. LCF had a non-smoking policy in place inside all buildings, and even if it was imperfectly enforced. "[i]mperfect enforcement of the policy shows, at most, negligence by the defendants, rather than de-

liberate indifference." *Taylor v. Boot,* 58 Fed.Appx. 125 (6th Cir.2003) (quoting *Scott,* 139 F.3d at 944). Contrary to his assertions, LCF officials in F–2 did heed Henderson's complaints, as they transferred him twice within the unit away from smoking prisoners, even though he complains that he still suffered from the presence of ETS in the area. Henderson also had ready access to medical care, as demonstrated by his numerous visits to health services at LCF. Given that he only had a right to be free from *unreasonable* levels of smoke, and not ETS in general (unless he could show a serious medical condition), the officials did not exhibit deliberate indifference to his requests.

## IV

For the foregoing reasons, we AFFIRM entirely the judgment of the district court.