**Curwood PRICE, Plaintiff,**

v.

**Patricia CARUSO, Defendant.**

**Civil Action No. 05–CV–71403–DT.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 8, 2006.

**890**

Curwood Price, Jackson, MI, pro se.

Julia R. Bell, Michigan Department of Attorney General, Lansing, MI, for Defendant.

***OPINION AND ORDER ACCEPTING AND ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION and GRANTING IN PART DEFENDANT'S MOTION FOR DISMISSAL***

FRIEDMAN, Chief Judge.

This matter is presently before the Court on Defendant's Motion for Dismissal for Lack of Subject Matter Jurisdiction.[1] Curwood Price ("Plaintiff") is a pro se prisoner. Patricia Caruso ("Defendant") is

---

1. Defendant seems somewhat confused about the federal rule under which she brings her Motion for Dismissal. The caption states: "Rule 12(b)(1) Motion for Dismissal for Lack of Subject Matter Jurisdiction." (Def.'s Mot. for Dismissal, 1.) However, elsewhere in her Motion for Dismissal, Defendant states that "Fed.R.Civ.P. 12(b)(6) provides for dismissal of an action for lack of subject matter juris- diction" and that "Plaintiff's action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) based on the lack of subject matter jurisdiction." (*Id.* ¶¶ 5, 11.) Moreover, Plaintiff seems to base much of her motion on an alleged failure to state a claim under Rule 12(b)(6). Therefore, the Court will examine Defendant's Motion for Dismissal in regard to Rules 12(b)(1) and 12(b)(6).

the Director of the Michigan Department of Corrections ("MDOC"). Plaintiff, who is Jewish, alleges that two official MDOC memorandums—signifying changes in prison policy—prevent him and other Jewish prisoners from holding adequate weekly Sabbath services and an annual Passover Seder.[2]

Magistrate Judge Steven Pepe has submitted a Report and Recommendation, in which he recommends that the Court grant in part Defendant's Motion for Dismissal. Plaintiff and Defendant object to the Report and Recommendation.

## I. HISTORY OF THE CASE

### A. FACTUAL BACKGROUND

Plaintiff is currently incarcerated at the Muskegon Correctional Facility ("MCF") in Muskegon, Michigan. At the time that Plaintiff filed his Complaint in 2005, he was a prisoner at the former State Prison of Southern Michigan ("SPSM"), in Jackson, Michigan. More than a decade ago, the SPSM was divided into separate facilities, which include the Southern Michigan Correctional Facility ("JMF") and the Parnall Correctional Facility ("SMT"). (Def.'s Br. Supp. Mot. for Dismissal, 3; Mag. J.'s R & R, 3.) At the time of the Complaint, Plaintiff was housed at the JMF. (Def.'s Br. Supp. Mot. for Dismissal, 2.)

Plaintiff alleges that two prison memorandums—dated February 27, 2004, and March 3, 2004—are violations of both the First Amendment and the caselaw established under an earlier Sixth Circuit case, *Whitney v. Brown*, 882 F.2d 1068, 1070 (6th Cir.1989).[3] (Pl.'s Compl. ¶ 13.) Plaintiff states that both memorandums were issued by Special Activities Coordinator Dave Burnett[4] (*Id.* ¶¶ 11–12) and "under the direction of the Defendant," (*Id.* ¶¶ 6–7).

The February 27, 2004, memorandum states, in relevant part:

SUBJECT: Jewish Services at JMF and SMT

. . . .

Effective April 1, 2004, JMF and SMT will no longer have combined worship services. Prisoners from SMT will no longer be transported to JMF for services. SMT will determine the appropriate time and space for their Jewish Services.

It is further noted that Kosher menu prisoners have no right to restricted or exclusive use seating. SMT Kosher menu line prisoners will be seated as directed by dining room staff.

It has been determined that the intent of the court order in *Whitney v. Brown*,

---

2. In the Jewish faith, the Sabbath is observed from Friday sundown until Saturday sundown. As explained by the Sixth Circuit, "a Sabbath service involves the Torah [a scroll containing holy scriptures, commonly known as the Old Testament] and a minyan, which is a gathering of no less than ten persons over the age of thirteen of the Jewish faith." *Whitney v. Brown*, 882 F.2d 1068, 1070 (6th Cir. 1989).

The annual Passover Seder is a family and community celebration that "marks the exodus of the Jewish people from Egypt." *Id.* at 1074. Although a Seder includes a meal and a religious service, "[s]eders do not require the presence of a Torah or a minyan." *Id.* at 1070.

3. In *Whitney,* the Sixth Circuit ruled that a 1985 MDOC policy—prohibiting prisoners from travelling between complexes within the SPSM prison in order to attend weekly Sabbath services and an annual Passover Seder—violated the Free Exercise Clause of the First Amendment.

4. Plaintiff seems to incorrectly state that Dave Burnett prepared both memorandums. While the February memorandum shows that it was issued by "Dave J. Burnett, Special Activities Coordinator" (Pl.'s Compl., Ex. A), the March memorandum shows that it was issued by "David M. Leach, Chaplain" (*Id.* Ex. B).

86–CV–1529–DT, will be satisfied with separate services because sufficient numbers of prisoners are housed at SMT to meet the requirement for ten men (a minyan) for a Torah service. (*Id.* Ex. A.)

The March 3, 2004, memorandum states, in relevant part:

SUBJECT: Jewish Seder

Pursuant to instructions from the Correctional Facilities Administration Special Activities Coordinator, Mr. Dave Burnett, the following changes are to be implemented as follows regarding the Seder Meals at JMF and SMT.

JMF and SMT will have separate Seders. That is, JMF will accommodate a Seder service and SMT will accommodate a separate Seder service. SMT will not transport prisoners to JMF for a Seder service. . . .

Because some Jewish prisoners keep Kosher, the Seder must be Kosher. Consequently, Kosher for Passover plates shall be ordered from Aleph Institute, Surfside, Florida. . . . If desired, a separate ceremonial plate may also be ordered. . . . No other vendor shall be used without approval from Mr. Burnett. Each prisoner who attends the Seder must pay his pro-rata share of the cost of the Seder. . . . Each Passover meal plate costs $10.00. Each prisoner is required to pay for his meal. . . . Each facility shall determine how the food will be ordered, received, stored, and made available to the space where it will be served. No food shall be removed by participating prisoners or Seder service leaders from the area where the Seder is observed.

Only those prisoners who have been regularly on call-out for Jewish services and/or study groups shall be eligible to participate in the Seder observance.

Guests shall be allowed only as follows:

● An appropriate Rabbi (or Cantor or other qualified person) plus not more than one assistant from the community shall be recruited by the Chaplain to conduct the Seder. Neither the Rabbi (or Cantor or other qualified person) nor the assistant is to be a family member of a prisoner nor on the approved visitor's list of any prisoner.

● Personal guests/family members shall not be allowed.

The facility, in cooperation with the person who will conduct the Seder, shall determine the length of time allowed for conducting the Seder.

. . . .

No additional food items, care packages, or treat sacks will be accommodated. . . .

(*Id.* Ex. B.)

Plaintiff seeks a Court declaration ordering that the two prison memoranda are invalid; granting injunctive relief to prevent further implementation of the memoranda; and awarding nominal, punitive, and compensatory damages. (*Id.* at 5–6.)

## B. *PROCEDURAL HISTORY*

On April 11, 2005, Plaintiff filed his Complaint.[5] On October 28, 2005, Defen-

---

**5.** The caption on Plaintiff's Complaint states: "Curwood L. Price, pro se, and other Jewish Practitioners." (Pl.'s Compl., 1.) Furthermore, in the body of the Complaint, Plaintiff similarly states that he brings the action on behalf of "all other Jewish Practitioners past, presently [sic], and in the future residing at JMF and SMT." (Pl.'s Mem. of Law Supp. Compl., 1.)

However, the Court regards the Complaint as being brought only on behalf of Plaintiff himself. Although it appears that Plaintiff is attempting to create a class action, his effort fails. Plaintiff has named an apparently overbroad class of people. Moreover, Plaintiff has not filed a motion to certify such a class action with this Court. Moreover, even in the event that Plaintiff did not intend to attempt a

dant filed its Motion for Dismissal for Lack of Subject Matter Jurisdiction. Plaintiff responded.

On April 21, 2006, Magistrate Judge Steven Pepe issued a Report and Recommendation regarding Defendant's Motion for Dismissal. Both Plaintiff and Defendant filed objections to the Report and Recommendation. Plaintiff filed a Response to Defendant's objections.

## II. *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

In his Report and Recommendation, Magistrate Judge Pepe recommends that Defendant's Motion for Dismissal be granted in part and therefore that several of Plaintiff's claims be dismissed. Although Plaintiff did not expressly characterize his claims as such, Magistrate Judge Pepe interprets Plaintiff's Complaint as based on 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA," 42 U.S.C. § 2000cc, *et seq.*). (Mag. J.'s R & R, 1 & n. 1.) The Magistrate Judge recommends that "the following of Plaintiff's claims be dismissed: claims for injunctive and declaratory relief and damages claims arising from RLUIPA claim against Defendant in her personal capacity and § 1983 claim against Defendant in her official capacity." (*Id.* at 1.) In other words, Magistrate Judge Pepe finds that "[al]though Plaintiff's claims for injunctive and/or declaratory relief are mooted, Plaintiff's claim for monetary damages under § 1983 against Defendant in her personal capacity remains cognizable, as does the RLUIPA claim against her in her official capacity." (*Id.* at 11 (footnote omitted).)

class-action lawsuit, the Court would still regard the case in the same manner, for Plaintiff should have specifically identified the other individual Plaintiffs *by name* in the caption.

## III. *ANALYSIS OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

As required by Federal Rule of Civil Procedure 72(b), the Court reviews this matter *de novo.* Fed.R.Civ.P. 72(b). Having made such a review, the Court will grant Defendant's Motion for Dismissal in part.

### A. *PLAINTIFF'S COMPLAINT*

■ The United States Supreme Court has held that the courts should hold a "pro se complaint" to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Sixth Circuit has explained, though, that in spite of such liberal treatment of the pleadings of pro se litigants, such as prisoners, "pro se plaintiffs are not automatically entitled to take every case to trial." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996). In other words, "the lenient treatment generally accorded to pro se litigants has limits." *Id.* Thus, while a court should liberally interpret a pro se complaint, a court should neither re-invent a plaintiff's complaint nor plead allegations that a plaintiff wishes not to pursue. Such actions would be condescending and overly paternalistic, and it would grind against the time-old principle that a plaintiff is the master of his complaint. For instance, the United States Supreme Court has found that "the party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913). Therefore, this Court liberally interprets pro se complaints, but always honors a plaintiff as the master of his own pleadings.

Therefore, the Court will treat Plaintiff's action as a one-plaintiff case, brought only by Plaintiff himself.

Here, the Magistrate Judge has liberally interpreted Plaintiff's Complaint. For instance, although Plaintiff does not mention RLUIPA in his Complaint, Magistrate Judge Pepe states that Plaintiff's "response to Defendant's motion asserts a RLUIPA claim and the facts of his complaint are sufficient to allege a RLUIPA claim." (Mag. J.'s R & R, 1 n. 1.) The Magistrate Judge also interprets the facts of Plaintiff's Complaint as presenting a Section 1983 claim, even though Plaintiff did not mention Section 1983. (*Id.* at 1.) Thus, Magistrate Judge Pepe bases his recommendations on Plaintiff's having presented a cause of action pursuant to Section 1983 and RLUIPA.

Plaintiff, though, *expressly* disagrees with part of the Magistrate Judge's interpretation. On the first page of his "Objection to Magistrate's Report and Recommendation," Plaintiff directly states—in bold, capital letters—"**THE PLAINTIFF DID *NOT* FILE A § 1983 ACTION.**" (Pl.'s Objection to Mag. J.'s R & R, 1.) Plaintiff further explains, again using underlines and bold text: "In the Plaintiff's original action he filed a complaint for Declaratory Judgement [sic] pursuant to *28 USCA § 2201*, and **not** 42 USCA § 1983." (*Id.*) Moreover, Plaintiff states, in similar textual style, that the "Plaintiff specifically AVOIDED § 1983, as he be-

lieves section § [sic] 2201 and 2202 were appropriate." (*Id.*) On the other hand, Plaintiff explains that he "has no objections to the Magistrates [sic] application of RLUIPA to his pleadings." (*Id.* at 5.) Therefore, the Court will regard Plaintiff's Complaint as he wishes—as a claim brought pursuant to Section 2201 and RLUIPA.[6]

### B. DEFENDANT'S MOTION FOR DISMISSAL

First, the Court will dismiss Plaintiff's claim brought under Section 2201. Section 2201 is a form of relief, not a cause of action. Furthermore, Plaintiff's requests for declaratory and injunctive relief are moot because Plaintiff is no longer incarcerated at JMF, as he has been transferred to MCF. *See Dellis v. Corrections Corp. of Am.,* 257 F.3d 508, 510 (6th Cir. 2001) (stating plaintiff's requests for injunctive and declaratory relief are moot because plaintiff is no longer incarcerated at the prison where the cause of action allegedly arose); *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996) (same).[7] Thus, any claim for declaratory or injunctive relief is dismissed as moot.

Second, although Defendant has filed a Motion for Dismissal under Rules 12(b)(1) and 12(b)(6), the Court regards it as a Motion for Summary Judgment under Rule 56(c).[8] Rule 56(c) states that sum-

---

**6.** This case is distinguishable from many prisoner cases, where a pro se prisoner welcomes the court's liberal interpretation of an inartfully plead complaint. Here, though, Plaintiff has *specifically* objected to the Magistrate Judge's interpretation of his Complaint. Plaintiff has *intentionally plead* in the way that he has done. It is, after all, his Complaint. The Court will neither wrest the reins of the Complaint away from Plaintiff, nor force Plaintiff to plead a cause of action that he has expressly disavowed.

**7.** Unlike declaratory and injunctive relief, Plaintiff may still be entitled to monetary relief. A prisoner's transfer to another prison

does not moot a prisoner's claim for monetary damages. *See Boag v. MacDougall,* 454 U.S. 364, 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam) (stating a prisoner's "transfer [does] not moot the damages claim"); *Prime Media, Inc. v. City of Brentwood,* 398 F.3d 814, 824 (6th Cir.2005) (same).

**8.** Federal Rule of Civil Procedure 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for

mary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(C). The United States Supreme Court has explained that Rule 56(c) "authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... (and where) no genuine issue remains for trial ... (for) the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' " *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). Moreover, when a court determines if a genuine issue of material fact exists, the court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, if there is a genuine dispute as to a material fact, then summary judgment should not be granted.

In the case at hand, Plaintiff may have a cognizable claim for monetary damages against Defendant, under RLUIPA. RLUIPA states:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title ["jail, prison, or other correctional facility"], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a) (2003). RLUIPA further provides:

A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.

*Id.* § 2000cc–2(a). A "government" is defined as a "State, county, municipality, or other governmental entity created under the authority of a State" or "any other person acting under color of State law." *Id.* § 2000cc–5(4)(A). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* 2000cc–5(7)(A). Lastly, RLUIPA applies "in any case" where "the substantial burden is imposed in a program or activity that receives Federal financial assistance." *Id.* 2000cc–1(b). Thus, under RLUIPA, Plaintiff may have a claim against Defendant, in her official governmental capacity, for monetary damages.

summary judgment and disposed of as provided in Rule 56." FED.R.CIV.P. 12(b). Here, Plaintiff and Defendant have submitted such affidavits and corollary documents outside of the pleadings.

Here, Plaintiff asserts that the two prison memoranda burden his First Amendment rights because they interfere with his free exercise of religion. Plaintiff alleges that he cannot properly observe the weekly Sabbath and annual Passover Seder unless the MDOC allows intercomplex travel between SMT and JMF for weekly Sabbath services. If intercomplex travel is prohibited, Plaintiff alleges that there is not enough Jewish prisoners to achieve a minyan, and therefore he cannot properly observe the weekly Sabbath service. Plus, Plaintiff asserts that the prison does not provide an adequate Seder.

In addition to his First Amendment rights, Plaintiff further contends that the two prison memoranda violate Sixth Circuit caselaw, as established by the court of appeals in *Whitney*. The *Whitney* court held that a 1985 MDOC policy, which prevented Jewish prisoners from travelling between complexes within SPSM in order to attend weekly Sabbath services and an annual Passover Seder, violated the Free Exercise Clause of the First Amendment. The *Whitney* court explained that "the Passover Seders, as modified to meet the prison officials' requests, fully accommodate the inmates' rights at a *de minimis* cost to the prison officials' valid penological interests and should be permitted." *Whitney*, 882 F.2d at 1074. Furthermore, the Sixth Circuit found that "the prohibition of intercomplex travel of the six Jewish inmates [in order to achieve a minyan] to be an exaggerated response to speculative security objectives, and, therefore, it is invalid." *Id.* at 1078.

The *Whitney* court, though, narrowed its holding to only those conditions of the prison *at the time* of the complaint, in the mid–1980s. The *Whitney* court stated that "[t]he inmates acknowledge that plans to divide the SPSM into separate facilities one day, apparently now five or six years down the road, might raise other questions concerning inmates' intercomplex travel." *Id.* at 1075. Moreover, it seems that those anticipated changes did indeed materialize after the *Whitney* opinion was issued. In an affidavit submitted along with Defendant's Motion for Dismissal, Special Activities Coordinator Dave Burnett states:

4. In 1986. ... [There were] three cell blocks of SPSM. All were part of SPSM under a single administration. [SPSM was later broken up into independent facilities, including SMT (housing Level I prisoners) and JMF (housing Level II and III prisoners).]

5. Therefore, JMF and SMT are now separate, independently managed prison facilities, quite unlike the situation in 1986.

6. In 1986, an all faith chapel building existed at SPSM. Within that chapel building was a Jewish chapel. Today, that all faith building, including the Jewish Chapel, is not available for use by anyone because it is in an area of SPSM that is no longer open.

7. In 1986, there were significantly fewer Jewish prisoners in the entire SPSM than there are in JMF and SMT today. In 1986, it was determined that in order to have a minyan, prisoners from the various parts of SPSM needed to gather together to have sufficient persons present for a Torah service. A minyan requires at least 10 males over the age of 13. As the court will note, the U.S. [sic] Court of Appeals for the Sixth Circuit decision in *Whitney v. Brown*, 882 F.2d 1068 (6[sic] Cir.1989), recognized that prisoners from all over SPSM had to be gathered together to find enough prisoners for a minyan. Similarly, if the prisoners had been left separate, a Jewish prisoner wishing to celebrate Seder may well have found themselves celebrating alone because of the lack of other Jewish prisoners in his

location. There are many more Jewish prisoners in SMT and JMF today. For example, on January 21, 2004, there were 33 Jewish prisoners at SMT, and 16 Jewish prisoners at JMF.

8. .... There is no minimum number of required participants for the Seder celebration because it is not a Torah service. It does not require the presence of a rabbi. Therefore, with both SMT and JMF having sufficient Jewish prisoners to have their own minyan service, there are certainly enough Jewish prisoners at each facility to have the "community celebration" preferred for Seder.

9. There is no minimum number of people required for the Seder celebration, however, I agree with the observation of a witness in the original *Whitney* hearing, that if a person observed Seder alone, it would be considered a fairly "miserable Seder." However, as is explained above, there are sufficient Jewish prisoners at each facility to celebrate Seder in a community of fellow believers.

(Def.'s Mot. for Dismissal at Burnett Aff. ¶¶ 5–9.) Moreover, the Eastern District of Michigan has already found that determinative changes have occurred since the time of the *Whitney* opinion:

> Significant changes in circumstances in the prisons in the Jackson, Michigan area have occurred since the *Whitney* decision was rendered in 1989. A large section of the Central Complex is no longer operational, including the chapel where the *Whitney* plaintiffs congregated for weekly Sabbath services. Importantly, the newer SMT and JMF facilities have their own chapel areas available for prisoners of all religions; and each facility now houses a sufficient Jewish prisoner population to meet the minyan requirements for Sabbath services and the preferred community for

> Seder.... [B]oth SMT and JMF have scheduled Seders....

*Whitney,* 86–CV–71529 (E.D.Mich. Apr. 2, 2004) (order denying motions for immediate consideration, civil contempt, and preliminary injunction). Thus, the prison memoranda do not seem to substantially burden Plaintiff's First Amendment rights nor to violate the caselaw established by *Whitney.*

However, when the facts are taken in the light most favorable to the non-moving party, the Plaintiff creates a factual dispute that prevents summary judgment. Plaintiff states that "[f]rom the time the memos were issued ... there has never been a Seder Dinner, nor have there been enough Jewish Prisoner[s] present at JMF to hold a Sabbath Service." (Pl.'s Objections to Mag. J.'s R & R, 5.) Plaintiff explains, in partially underlined and bold text, that "there were **NEVER more than 6 prisoners attending Jewish Services.**" (*Id.*) Therefore, a genuine issue of material fact exists.

## IV. CONCLUSION

The Court finds that Defendant's Motion for Dismissal was based on Rules 12(b)(1) and 12(b)(6), as Defendant asserted both rules as grounds for his Motion. As the parties submitted affidavits and corollary documents outside of the pleadings, the Court regards Defendant's Motion for Dismissal as a Motion for Summary Judgment, as permitted under Rule 12(b).

Having reviewed the Magistrate Judge's Report and Recommendation, Motion for Dismissal, and relevant pleadings and documents, the Court finds that Magistrate Judge Pepe was correct in recommending the dismissal of Plaintiff's claims for injunctive and declaratory relief. The Court similarly agrees with the Magistrate Judge's interpretation of Plaintiff's Complaint as presenting a RUILPA claim. The

Court also finds that there exists a genuine issue of material fact. Lastly, and unlike the Magistrate Judge, the Court finds that Plaintiff did not assert a Section 1983 action. Thus, for the reasons stated above, Plaintiff's and Defendant's objections are overruled in part. Accordingly,

IT IS ORDERED that the Magistrate Judge's Report and Recommendation of April 21, 2006, is accepted and adopted only insofar as is consistent with the above findings.

IT IS FURTHER ORDERED that Defendant's Motion for Dismissal is granted in part, as is consistent with the above findings.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed, except as to Plaintiff's RUILPA claim for monetary damages.

### REPORT AND RECOMMENDATION

STEVEN D. PEPE, United States Magistrate Judge.

On April 11, 2005, Plaintiff, Curwood L. Price, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a complaint for damages and for declaratory and injunctive relief against Defendant, MDOC Director Patricia Caruso, pursuant to 42 U.S.C. § 1983 and Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] All pretrial proceedings have been referred pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant filed a motion for dismissal on October 28, 2005 (Dkt.# 23). For the reasons stated below, IT IS RECOMMENDED that Defendant's motion be GRANTED IN PART and the following of Plaintiff's claims be dismissed: claims for injunctive and declaratory relief and damages claims arising from RLUIPA claim against Defendant in her personal capacity and § 1983 claim against Defendant in her official capacity.

### I. BACKGROUND

Plaintiff's complaint alleges that the directive contained in February 17, 2004, and March 5, 2004, memos (the "Memos", Dkt. # 1, Exhibit A & B) issued by a Dave Burnett, whom Plaintiff alleges was acting under the direction of Defendant, constitutes an impermissible violation of his First Amendment right to freely practice his Jewish faith and are violative of Sixth Circuit law set forth in *Whitney v. Brown*, 882 F.2d 1068 (6th Cir.1989).

In *Whitney*, prisoners held at the State Prison of Southern Michigan (SPSM) challenged a prison policy instituted in 1985 that prohibited prisoners from different areas within SPSM from meeting for weekly Sabbath services and annual Passover Seder. *Id.* at 1069. Jewish prisoners at SPSM had been congregating in SPSM's Central Complex for their religious services from the time SPSM opened until 1985—forty-five years. *Id.* at 1070. In 1985, SPSM was divided into Central, South and North Complex. Each complex was separate and autonomous and each housed prisoners of different security levels. Central Complex was maximum security, South Complex minimum security and North Complex medium security. *Id.* at 1069–70.

The Jewish faith requires that Sabbath services be conducted with the Torah and

---

1. While Plaintiff in his claim does not specifically mention the RLUIPA in his complaint, his response to Defendants' motion asserts a RLUIPA claim and the facts of his complaint are sufficient to allege a RLUIPA claim. Thus, his claims will be treated as also constituting a RLUIPA claim. *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974 (2d Cir.

1945)(A plaintiff is required to plead a "simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and hopes to recover" and it is the "court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not".).

a minyan—a gathering of no less than 10 persons over the age of 13. *Id.* at 1070. The Passover Seder does not require a Torah or a minyan, "but because [it] is a celebration of the exodus of the Jewish people out of Egypt, an individual's solo seder, or one conducted with only a very few worshippers, was characterized [ ] as 'a very miserable seder' ". *Id.* The *Whitney* Plaintiffs argued that preventing Jewish prisoners from the Central, North and South Complex from congregating did not allow a minyan for Sabbath Services and made celebrating the Seder "miserable" (at the time of the suit there were 4 Jewish practitioners in Central Complex and a total of 6 practitioners in the North and South Complex). *Id.* This, they argued, was a violation of their First Amendment right to free exercise of religion.

The Sixth Circuit held that the prison's "goal of minimizing mingling between inmates of different security levels is sound prison management", but held that this goal was not reasonably related to the restraints on Sabbath services. *Id.* at 1073–74. The Sixth Circuit also upheld the lower court's finding that the Passover Seder, as then modified, "fully accommodated the inmates' rights at a *de minimis* cost to the prison officials' valid penological interests and should be permitted". *Id.* The Court found that *under the then current conditions of the prison,* the transfer of 6 prisoners posed few problems for prison officials, but acknowledged that plans to further divide SPSM into 6 completely separate facilities "might raise questions concerning inmates' intercomplex travel" when this occurred, "five or six years" later. *Id.* at 1075.

SPSM has now been broken down into various separate facilities including the relevant facilities—Parnall Correctional Fa-

cility (referred to by the parties as "SMT"), which houses Level I inmates and Southern Michigan Correctional Facility (referred to by the parties as "JMF"), which houses Level II and IV inmates (Dkt.# 23, p. 3).

Plaintiff was housed in JMF at the time he filed this suit. He challenges the following provisions of the new policy contained in the Memos as violative of *Whitney:* (a.) prisoners from JMF no longer being transported to SMT for Jewish services and/or Seder,[2] (b.) food items being provided by the facility for addition to Seder meal plates (instead of a fully catered meal) and (c.) no outside guests for Seder dinner.

Plaintiff argues that the *Whitney* Court's directive is still valid despite the changes to the prison and requires intercomplex travel for Jewish religious services, a fully catered Seder dinner and 2 guests per prisoner for Seder dinner. Defendant argues that (a.) Plaintiff does not have standing to challenge the policies at JMF because he has been transferred to another facility, (b.) the changes in the prison were contemplated by the *Whitney* Court and under the new situation *Whitney* can be distinguished, (c.) there are sufficient numbers of Jewish prisoners in each facility to hold services, (d.) the *Whitney* opinion did not require the prison to permit outside guests or set standards for the preparation of the Seder meal and (e.) Defendant is entitled to immunity.

## II.  LEGAL STANDARD

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th

---

**2.** The Memos state that this new policy satisfied the intent of *Whitney* because sufficient numbers of Jewish prisoners were now housed at SMT to meet a minyan (Dkt. # 1, Exhibit A).

Cir.2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir.2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56.

Under Fed.R.Civ.P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also, Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir.1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir.1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir.1983). Once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

### *Plaintiff's Transfer to Another Facility Moots Request for Declaratory and Injunctive Relief*

Plaintiff was transferred from JMF to Muskegon Correctional Facility (MCF) in August 2005—5 months after the Complaint was filed in this matter. Defendant has labeled this problem as one of Article III standing. Yet the issue is really one of mootness. The difference in the doctrines of standing and mootness was discussed in *Stevens v. Northwest Indiana Dist. Council, United Broth. of Carpenters*, 20 F.3d 720, 724 (7th Cir.1994):

"Mootness doctrine refers to events occurring *subsequent* to the filing of suit which dissipate the requisite personal interest in the resolution of the claim that presumably existed at the commencement of the litigation. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479, [ ] (1980)." For example, a request

for an injunction to dissolve a trusteeship which has been lifted during the pendency of litigation presents an issue of mootness. *See, e.g., Air Line Stewards and Stewardesses Ass'n, Local 550 v. Transport Workers Union of America*, 334 F.2d 805, 808 (7th Cir.1964), *cert. denied*, 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563 (1965). .... Whether, ... the complained of injury is adequately traceable for Article III purposes to the past allegedly unlawful conduct is a matter of "causation," which is in turn a component of the jurisprudence of standing. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

*Id.*

In the present case Plaintiff was housed at JMF when the challenged directives were issued in the Memos, but has since been transferred to another facility. This does necessarily mean that he could not have been injured by the directives while he was still housed at JMF. Therefore, Plaintiff still has standing to bring this matter. Yet, the Sixth Circuit has held that a prisoner's claim for declaratory and injunctive relief becomes moot once the prisoner is transferred from the prison of which he complained to a different facility. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996). To the extent that Plaintiff asks for injunctive and declaratory relief against officials at JMT, his claim is moot. *See Henderson v. Martin*, 73 Fed.Appx. 115, 117 (6th Cir.2003). Yet, Plaintiffs claim for monetary damages pertaining to his alleged inability to practice his religion while housed in JMT remains cognizable. *See Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (transfer to another prison did not moot prisoner's damages claim arising from placement in earlier prison); *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1257 (10th Cir.2004) (injunctive relief could no longer redress the injury but plaintiff's damages claim saved the action from mootness); *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 824 (6th Cir.2005).

### Defendant is not Entitled to Complete Immunity from Request for Monetary Damages

Defendant correctly argues that an unconsenting State is immune from suits brought in federal courts by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Duhne v. New Jersey*, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). It is also well established that even though a State is not named as a party to the action, the suit may nonetheless be barred by the Eleventh Amendment where a private party is "seeking to impose a liability which must be paid from public funds in the state treasury...." *Edelman v. Jordan*, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 39 L.Ed.2d 662(1974) (citations omitted).

Plaintiff named Patricia Caruso as the sole defendant in this matter, but did not indicate whether he was suing her in her official or unofficial capacity, or both.[3]

---

**3.** The Sixth Circuit has "adopted a 'course of proceedings' test to determine whether a § 1983 defendant has received notice that a plaintiff intends to hold the defendant personally liable for a constitutional violation. ....

This 'test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint....' .... Here, Plaintiff sought money

### Official Capacity—Sovereign Immunity

■ Since MDOC is an entity which is funded with public funds from the Michigan State Treasury, the Eleventh Amendment often bars suit against MDOC. *Richard v. Michigan Dept. of Corrections,* 22 Fed.Appx. 563, 564 (6th Cir.2001)(citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Abick v. Michigan,* 803 F.2d 874, 876–77 (6th Cir.1986)). Further, individuals sued in their official capacities stand in the shoes of the entity they represent. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Official capacity suits ... represent only another way of pleading an action against an entity of which an officer is an agent.")); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."); *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir.2003).

The United States Supreme Court has specifically held that a State is not a "person" against whom a § 1983 claim for money damages might be asserted. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). But, the Eleventh Amendment does not automatically provide a shield of sovereign immunity from claims arising in all instances, and Plaintiff's claims arising under the Religious Land Use and Institutionalized Persons Act (RLUIPA), survive a challenge based solely on immunity, as described more fully below.

The state may waive its Eleventh Amendment immunity by consenting to suit (*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)), and acceptance of federal funding can, in certain instances, constitute a waiver of a state's sovereign immunity (*South Dakota v. Dole,* 483 U.S. 203, 207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987)(Congress may condition its grant of funds to the States upon their taking certain actions and acceptance of the funds entails an agreement to the actions)). The language of RLUIPA anticipates such a waiver: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," where a government is defined as "a State, county, municipality, or other governmental entity created under the authority of a State." 42 U.S.C.A. § 2000cc–2(a), § 2000cc–5(4)(a)(i); *Benning v. Georgia,* 391 F.3d 1299, 1305 (11th Cir.2004) ("Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA.").  ·

Defendant did not address the issue of whether MDOC has accepted federal funding, which would preclude its sovereign immunity defense under RLUIPA, nor the validity of Plaintiff's RLUIPA claim. Therefore, Defendant's claim for sovereign immunity based on her status as a state official must be denied.

In sum, because Plaintiff's transfer to a new facility bars his claims for injunctive or declaratory relief the only relief available from Defendant in her official capaci-

---

damages in his complaint. Because state officials cannot be sued for money damages in their official capacities, *Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* ... 535 U.S. 613, 122 S.Ct. 1640, 1643, 152 L.Ed.2d 806

... (2002), the request for money damages indicates a personal capacity suit." *Young ex rel. Estate of Young v. Martin,* 51 Fed.Appx. 509, 512 –513 (6th Cir.2002).

ty is a claim for monetary damages, which is not cognizable under § 1983, but may be pursued under RLUIPA.

### Personal Capacity—Qualified Immunity

In civil suits for money damages, government officials acting in their official capacity are entitled to qualified immunity for discretionary acts which do not violate clearly established law of which a reasonable person would have known. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).... The Supreme Court has recently clarified that, in order to assess whether the defendants-officials in this case should be cloaked with immunity from suit, we must engage in a two-part, sequential analysis: first, we must determine whether the plaintiff has alleged facts which, when taken in the light most favorable to [him], show that the defendant-official's conduct violated a constitutionally protected right; if we answer the first question in the affirmative, we must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

*Comstock v. McCrary,* 273 F.3d 693, 701–702 (6th Cir.2001).

Whether the government official "is protected by qualified immunity turns on 'the objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time the action was taken." *Caldwell v. Moore,* 968 F.2d 595, 599 (6th Cir.1992) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

In the present case, this two-part inquiry cannot be sufficiently answered on the pleadings as a 12(b)(6) motion requires. Nor can it be sufficiently answered by converting this motion to one for summary disposition and taking into account the facts presented by the parties outside of the pleadings.

The conditions that prompted the *Whitney* Court to require intercomplex travel of Jewish prisoners between the complexes at SDSM may no longer be present and the new conditions may or may not have required accommodations in order for Sabbath and Seder services to continue while Plaintiff was still housed at JMF.[4] In fact, the new conditions may negate the reasons the *Whitney* Court felt accommodations could be made for Jewish prisoners with only a *de minimis* effort by the prison. These are questions of fact for which neither side has provided sufficient support for the Court to make a summary decision.

The affidavit attached to Defendant's motion indicates that the directives in the Memos were valid because there were enough Jewish inmates at both JMF and SMT for Sabbath services to be conducted with a minyan and Seder services would be performed at each location. Yet, Plaintiff alleges that there were not enough Jewish

4. In fact, an April 2004 motion for a temporary restraining order and preliminary injunction based on the same March 29, 2004, memo cited by Plaintiff in this matter was recently denied in the *Whitney* case by Judge John Corbett O'Meara. Judge O'Meara held that "significant changes in circumstances in the prisons in Jackson, Michigan area have occurred since the *Whitney* decision was rendered in 1989. .... Importantly, the newer SMT and JMF facilities have their own chapel areas ... and each facility now houses a sufficient Jewish prisoner population to meet the minyan requirements for Sabbath services and the preferred community for Seder. .... ... both SMY and JMF have scheduled Seders for April 8, 2004."

prisoners attending services at JMF to allow him to participate in Sabbath services with a minyan. Defendant did not provide information regarding how many prisoners that identified themselves as Jewish at JMF actually attended Sabbath services. Therefore, a question of fact remains as to whether Plaintiff was entitled to further or continuing accommodations to ensure that a minyan was present in the facility in which he was housed despite the number of eligible Jewish prisoners in that facility.[5]

In sum, though Plaintiff's claims for injunctive and/or declaratory relief are mooted, Plaintiff's claim for monetary damages under § 1983 against Defendant in her personal capacity remains cognizable, as does the RLUIPA claim against her in her official capacity[6].

## III. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion be **Granted In Part** and the following of Plaintiff's claims be dismissed: claims for injunctive and declaratory relief and damages claims arising from RLUIPA claim against Defendant in her personal capacity and § 1983 claim against Defendant in her official capacity.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of

a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

April 21, 2006.

---

5. There currently is also a question of fact regarding whether (if the Memos can be attributed to Defendant) Defendant's actions can be considered reasonable when "assessed in the light of the legal rules that were 'clearly established' at the time the action was taken". Even taking Plaintiff's allegations as true, unless Plaintiff can show that Defendant had knowledge that not enough Jewish inmates at JMF would attend Sabbath services to comprise a minyan (provided there are actually 16 Jewish prisoners at JMF) it seems doubtful that Plaintiff can succeed in saying that De-

fendant's decision to maintain separate Sabbath services was unreasonable.

6. Plaintiff may not assert a RUILPA claim against Defendant in her individual capacity—"A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against *a government*," where a government is defined as "a State, county, municipality, or other governmental entity created under the authority of a State." 42 U.S.C.A. § 2000cc–2(a) (emphasis added).